GARELD J. MORRIS AND BONNIE K. MORRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Morris v. Commissioner
Docket No. 2042-86.
United States Tax Court
T.C. Memo 1987-563; 1987 Tax Ct. Memo LEXIS 561; 54 T.C.M. (CCH) 1062; T.C.M. (RIA) 87563; November 10, 1987. Jerome A. Maeder, for the petitioner. Joseph R. Peters, for the respondent. GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d)(3) of the Internal Revenue Code *562 of 1954 (redesignated section 7443A(b)(3) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rule 180 et seq. [1]
Respondent determined a deficiency of $ 427.00 in petitioner's Federal income tax for 1981. The only issue for decision is whether petitioner Gareld J. Morris is entitled to a deduction under section 215 for *certain payments made to his former wife pursuant to a divorce decree. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner was a resident of Wisconsin Rapids, Wisconsin at the time he filed his petition. Petitioner timely filed a joint Federal income tax return for 1981. [2]
Petitioner was married to Nancy J. Morris (Nancy) on August 2, 1969 in Wisconsin Rapids, *563 Wisconsin. The marriage lasted ten years and the couple had no children. Nancy filed for divorce and a trial was held on May 9, 1980 in the Circuit Court for Wood County, Wisconsin. Prior to trial, petitioner and Nancy, through their respective attorneys, orally stipulated to a division of the marital property. The terms of the agreement were elicited from the testimony during the divorce trial. At the divorce trial, and on direct examination, Nancy agreed that "in lieu of alimony" she would quitclaim her interest in the couple's house to petitioner "in exchange for * * * $ 19,000." Later, the court inquired whether the "settlement [was] in lieu of alimony," whereupon Nancy's attorney replied, "That's correct." On further questioning, Nancy acknowledged under oath that she understood the settlement was "in lieu of maintenance payments or * * * alimony payments." When Nancy was cross-examined at the divorce trial by petitioner's counsel, Nancy indicated that she understood petitioner planned to deduct the payments to her from his Federal income tax and that she would have to include the payments in her income. Upon direct examination of petitioner, he acknowledged that essentially *564 he was "buying" from Nancy her interest in the house and that the payments to her were "in lieu of any maintenance." Pursuant to the June 9, 1980 Judgment of Divorce, Nancy was awarded some personal items and $ 19,000 in cash, $ 5,000 of which was to be paid by petitioner to Nancy by August 9, 1980. The $ 14,000 balance was to be paid without interest in 122 monthly installments of $ 114.75 each. The court ordered Nancy to convey her interest in the couple's jointly held real estate to petitioner by quitclaim deed. To secure the payment of the money awarded to Nancy, she was given a lien on the property. The judgment provided that the monetary award to Nancy was "in lieu of alimony." On August 3, 1985, Nancy signed an affidavit stating that she considered the payments to her to be alimony. Even with these payments, Nancy's income was not enough to require the filing of an Individual U.S. income tax return for 1981. On June 16, 1986, Nancy's attorney at the divorce trial signed an affidavit stating that the parties intended the payments to Nancy to be treated as alimony. He stated further that the words in the judgment "in lieu of alimony" were a scrivener's error and boilerplate *565 language routinely included in divorce judgments in Wisconsin. On July 28, 1986, pursuant to a stipulation by the parties, the Circuit Court for Wood County amended the judgment, eliminating the words "in lieu of alimony," nunc pro tunc. Section 215 allows an individual a deduction for payments made to a former spouse if such payments are includable in the former spouse's income under section 71. Section 71(a)(1) provided that if a wife is divorced from her husband, her gross income includes "periodic payments" received from the husband pursuant to a divorce decree which is imposed because of the marital or family relationship. Section 71(c)(2) includes within "periodic payments" installment payments of a fixed sum where the payment period extends for more than ten years. Sec. 1.71-1(d)(2), Income Tax Regs.
However, even if the payment period extends for more than ten years, installment payments that are found to be a part of a property settlement are not covered by section 71. Gammill v. Commissioner,710 F.2d 607 (10th Cir. 1982), affg. 73 T.C. 921 (1980); Widmer v. Commissioner,75 T.C. 405 (1980); Thompson v. Commissioner,50 T.C. 522, 525 (1968). *566 As explained in Jackson v. Commissioner,54 T.C. 125, 129 (1970): We have recognized on a number of occasions that where there is a division of property or where the husband makes payments in satisfaction of property rights of the wife the amounts received by the wife are capital in nature and are neither includable in her gross income under section 71 nor deductible by the husband under section 215. [Citations omitted.]
Therefore, we need not address the provisions of section 71 unless we determine that the installment payments were in the nature of support and not a property settlement. Griffith v. Commissioner,T.C. Memo. 1983-278, affd. 749 F.2d 11 (6th Cir. 1984). Petitioner argues first that the parties intended the periodic payments to be for Nancy's support. He further maintains that the words "in lieu of alimony" in the judgment were a scrivener's error and that the 1986 amendment nunc pro tunc should be given retroactive effect for Federal tax purposes. Whether the periodic payments made by petitioner were support payments or part of a property settlement is a question of fact. Wright v. Commissioner,543 F.2d 593 (7th Cir. 1976), *567 affg. 62 T.C. 377 (1974). We must determine the intention of the parties with respect to the payments in light of the surrounding facts and circumstances. Wright v. Commissioner, supra;Bardwell v. Commissioner,318 F.2d 786, 789 (10th Cir. 1963), affg. 38 T.C. 84 (1962); Suarez v. Commissioner,68 T.C. 857, 861 (1977). In making such determination, we may consider as one factor any agreement between the parties as to the treatment of such payments. However, the labels given to the payments by the parties, the decree, or the state law, do not govern their characterization for tax purposes. Wright v. Commissioner, supra;Joslin v. Commissioner,52 T.C. 231, 236 (1969), affd. 424 F.2d 1223 (7th Cir. 1970); Taylor v. Campbell,335 F.2d 841 (5th Cir. 1964). Because the labels contained in a written judgment of divorce may not reflect the true intentions of the parties, this Court has identified the following factors, the presence of which indicates that the payments are in the nature of a property settlement: (1) Whether a fixed amount is stated in *568 the agreement; (2) whether the payments are related to the income of either spouse; (3) whether the payments are to continue without regard to the remarriage or death of the wife; (4) whether the wife relinquishes property rights or gives other consideration in exchange for the payments; and (5) whether the husband's obligation to make the payments is secured. Yoakum v. Commissioner,82 T.C. 128, 140 (1984); Beard v. Commissioner,77 T.C. 1275, 1284-1285 (1981). In examining the transcript of the divorce trial and the written Judgment of Divorce, using these factors as a guide, we conclude that the payments to Nancy were a part of the property settlement. First, the Judgment of Divorce required petitioner to pay Nancy a fixed amount of $ 114.75 a month for 122 months. Second, the judgment neither expressly nor implicitly subjected the payments to any contingencies. Whether petitioner's or Nancy's income subsequently increased or decreased, petitioner remained obligated to pay Nancy $ 114.75 per month. Third, Nancy's remarriage or death would not affect petitioner's liability on these payments. Fourth, we note that some of the real property acquired *569 by petitioner and Nancy during their marriage was held jointly. Pursuant to the Judgment of Divorce, Nancy executed a quitclaim deed to her husband with respect to such property. This act clearly constitutes a relinquishment of her property interests which would support subsequent property settlement payments. Finally, a lien was placed on the property deeded to petitioner to secure payment of the $ 19,000 in full. When we consider all these facts, they lead us to the inescapable conclusion that the payment provision was intended by the parties to be part of an overall property settlement rather than support payments for Nancy. Widmer v. Commissioner, supra at 409; McCombs v. Commissioner,397 F.2d 4, 7 (10th Cir. 1968), affg. a Memorandum Opinion of this Court. Finally, the fact that the Judgment of Divorce was amended nunc pro tunc does not change our result. Retroactive judicial determinations cannot for Federal income tax purposes changes the rights of the parties or the legal status of the payments. Gordon v. Commissioner,70 T.C. 525, 530 (1978); Daine v. Commissioner,9 T.C. 47, 52 (1947), affd. 168 F.2d 449 (2d Cir. 1948). *570 Thus, where a State court enters an order purporting to relate back to a prior date, but which actually reflects an intention or design which originated subsequent to that date, such orders will not be given effect for Federal tax purposes. Newman v. Commissioner,68 T.C. 494, 501 (1977). However, where the retroactive order was entered to correct a mistake in a divorce decree, such an order, a true nunc pro tunc order, will be recognized for Federal tax purposes. Gordon v. Commissioner, supra at 530; Newman v. Commissioner, supra at 501. In determining, however, whether the order of the Circuit Court for Wood County was a true nunc pro tunc order, we are required to follow the rule enunciated in Commissioner v. Estate of Bosch,387 U.S. 456 (1967). In Commissioner v. Estate of Bosch, the Supreme Court decided that where the application of a Federal statute involves an issue of State law, we should follow the law as announced by the highest court of the State. Commissioner v. Estate of Bosch, supra at 465. In Wisconsin, a court's nunc pro tunc authority is limited to rectifying what might *571 be termed "mechanical errors." Strawser v. Strawser,126 Wis.2d 485, 377 N.W.2d 196 (1985). This point was underscored by the Wisconsin Supreme Court in Estate of Gibson,7 Wis.2d 506, 515, 96 N.W.2d 859, 864 (1959): The circuit court has the power even after the term to correct its judgment or to add omitted portions thereto to conform the judgment to that actually pronounced. A court cannot modify its judgment to make it conform to what the court ought to have or intended to adjudge. There is nothing in the record to indicate that the original Judgment of Divorce did not conform to that actually pronounced at the divorce trial. This becomes obvious in the transcript of the divorce trial, where the parties stated no fewer than four times that the arrangement between them was "in lieu of alimony." In light of the surrounding facts and circumstances, it seems clear to us that the purpose of the amendment six years after the fact was not to correct a scrivener's error, but to accommodate petitioner's desire to obtain a tax deduction for the payments he was required to make to his former wife. Based on the record as a whole, we conclude that *572 petitioner made the payments to Nancy as pat of a property settlement and not in discharge of a legal obligation arising out of the marital relationship. Accordingly, we hold that petitioner is not entitled to a deduction under section 215 for the payments made to his former wife during 1981. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect in the year in issue, unless otherwise indicated. ↩
2. Petitioner's present wife, Bonnie K. Morris, is a party to this proceeding because she filed a joint 1981 Federal income tax return with petitioner. References herein to "petitioner" are references to Gareld J. Morris. ↩